FILED

**KRALIK & JACOBS LLP**
JOHN J. KRALIK IV, NO. 91206
e-mail: john.kralik@kralikjacobs.com
301 North Lake Avenue, Suite 202
Pasadena, California 91101
Telephone: (626) 844-3505
Facsimile: (626) 844-7643

2009 APR -3  PM 1: 38

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

Attorneys for Plaintiff
Federal Deposit Insurance Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for IndyMac Bank, F.S.B., <br><br> Plaintiff, <br><br> v. <br><br> ALLIANCE TITLE CO., INC., a California Corporation, REED BENNETT ROBERTSON, an individual doing business as "NATURAL CAPITAL"; JAMES FLORES HAW, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. CV09- 2342 DSF AJWx <br><br> COMPLAINT FOR: <br><br> (1) BREACH OF CONTRACT <br> (2) SPECIFIC PERFORMANCE <br> (3) PROFESSIONAL NEGLIGENCE <br> (4) CONTRACTUAL INDEMNITY <br> (5) FRAUD <br> (6) BREACH OF CONTRACT (CLOSING AGENT) <br> (7) PROFESSIONAL NEGLIGENCE (CLOSING AGENT) |

Plaintiff Federal Deposit Insurance Corporation ("FDIC"), as Receiver

for IndyMac Bank, F.S.B., for causes of action against Defendants, alleges upon

-1-

Complaint

1  knowledge with respect to acts concerning itself, and otherwise upon
2  information and belief:

## JURISDICTION

3
4       1.      This Court has original jurisdiction of this civil action pursuant to
5  12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1331.  As a suit brought by the
6  FDIC, this suit is deemed to arise under the laws of the United States.

## THE PARTIES

7
8       2.      Plaintiff FDIC is a United States government corporation that,
9  among other functions, guarantees the deposits of its member banks and thrift
10 institutions.
11      3.      IndyMac Bank, F.S.B. ("IndyMac") was a federally chartered
12 savings bank with its principal place of business in Pasadena, California.  On
13 July 11, 2008, IndyMac was closed by the Office of Thrift Supervision and the
14 FDIC was appointed as receiver.  On the same date, a new institution, IndyMac
15 Federal Bank, FSB was chartered, and all of the insured deposits and
16 substantially all of the assets of IndyMac were transferred to New IndyMac, but
17 the FDIC, as receiver for IndyMac, retained the rights to certain claims
18 including, but not limited to, the claims asserted below.  For these reasons, the
19 FDIC, in its capacity as receiver of IndyMac, is entitled to bring this action to
20 recover on the claims asserted herein.
21      4.      Defendant ALLIANCE TITLE CO., INC. ("Alliance") is a
22 California Corporation which performs closing services for real estate sales and
23 loans in California.  It belongs to the family of Mercury Companies, Inc., one of
24 the nation's largest providers of real estate-related services, and does business
25 in virtually all California Counties.  Alliance filed for Chapter 7 bankruptcy
26 protection on June 5, 2008.  On November 26, 2008 the FDIC obtained relief
27 from the automatic stay imposed by U.S.C. § 362(a) to pursue its claims against
28

-2-

Complaint

1   Alliance for the purpose of obtaining the proceeds of Alliance's insurance

2   policy.

3        5.     Defendant REED BENNETT ROBERTSON ("Robertson") is an

4   individual residing in Contra Costa County, California, and conducting business

5   in the State of California.  At the time during which the causes of action alleged

6   herein arose, Robertson did business under the fictitious business name of

7   "Natural Capital."

8        6.     Defendant JAMES FLORES HAW ("Haw") is an individual

9   residing in Placer County, California.

10       7.     The FDIC is ignorant of the true names and capacities, whether

11  individual, corporate, associate or otherwise, of Defendants DOES 1 through

12  10, inclusive.  The FDIC is informed and believes and on that basis alleges that

13  each fictitious defendant was in some way responsible for, participated in, or

14  contributed to, the matters and things of which the FDIC complains herein and

15  in some fashion has legal responsibility therefor.  When the exact nature and

16  identity of such fictitious defendants' responsibility for, participation in, and

17  contribution to, the matters and things herein alleged is ascertained by the

18  FDIC, it will seek to amend this Complaint and all proceedings herein to set

19  forth the nature of these defendants' identities.

20                        **VENUE**

21       8.     The venue of this action in this Court is proper because  for at least

22  the following reasons:

23            a)     The place of performance for all or some of the obligations

24  sued upon, including the obligations of Robertson under Seller Contract and

25  Lending Guide (as defined and described below), was in this District.

26            b)     The Seller Contract between IndyMac and Robertson

27  expressly provides that in the event of a lawsuit related to the Seller Contract,

28

---

Complaint

1  the parties consent to jurisdiction in the state and federal courts located in the

2  County of Los Angeles, State of California.

3          c)      A substantial part of the events or omissions giving rise to

4  the claim and the injury alleged herein occurred within this District.

### THE CONTRACTUAL RELATIONSHIP
### BETWEEN INDYMAC AND ROBERTSON

7  *A. The Customer Contract and Lending Guide*

8          9.      On or about May 12, 2005, IndyMac and Robertson entered into a

9  Customer Contract and e-MITS User Agreement (the "Customer Contract").  A

10  true and correct copy of the Customer Contract is attached hereto as Exhibit A

11  and incorporated herein by reference. The Customer Contract sets forth the

12  understanding between the parties, whereby Robertson agreed to submit

13  mortgage loans for funding by, or sell mortgage loans to, IndyMac and

14  IndyMac agreed to fund or buy mortgage loans submitted by Robertson,

15  pursuant to the provisions of the IndyMac Lending Guide (the "Lending

16  Guide").  As is customary in the industry, the entire Lending Guide is

17  voluminous in nature, hence the applicable provisions thereof are alleged here

18  by stating their legal effect.

19          10.     The Customer Contract expressly provided that Robertson "shall

20  diligently perform all duties incident to the sale . . . and/or table funding, as

21  applicable, of all mortgage loans which may be sold by Customer [here,

22  Robertson] to, . . . and/or delivered by Customer for table-funding by Company

23  . . . . ."  (Customer Contract, Exhibit A, ¶ 1.)

24  *B.  Duties, Representations and Warranties of Robertson for Loans Submitted*

25  *Pursuant to the Customer Contract and Lending Guide*

26          11.     The Customer Contract expressly incorporates by reference all of

27  the terms and conditions of the Lending Guide.  In the Customer Contract,

28  Robertson agreed that he had read the guide and had the ability to sell, service

-4-

Complaint

1    and/or facilitate the table funding of mortgage loans in accordance with the
2    Lending Guide.

3         12.    Pursuant to the terms of the Lending Guide, Robertson made
4    certain representations and warranties to IndyMac regarding each loan
5    submitted under the Customer Contract.  Those representations and warranties
6    included, but are not limited to, the following

7         (a) That, to the best of the Seller's knowledge, neither the Seller
8              Contract, nor any verbal or written statement, report or other
9              document furnished or to be furnished pursuant to the Seller
10             Contract or in connection with the transactions contemplated
11             thereby contains any untrue statement of fact or omits to state a
12             fact necessary to make those statements not misleading. (Lending
13             Guide § 1205.06).

14        (b) That each loan conformed in all respects to the requirements of the
15             Lending Guide, and the information set forth in each Loan
16             Document delivered by Robertson conformed in all respects to the
17             requirements of the Lending Guide and was true, complete and
18             accurate, and that no material fact about the loan had been
19             misstated or omitted.  (Lending Guide § 1206.02(a).)

20        (c) That there were no circumstances or conditions with respect to the
21             security instrument, the subject property, the mortgagor, the
22             mortgagor's credit standing or the origination of the loan that
23             could cause private institutional investors who invest in loans with
24             similar loan program parameters to regard the loan as an
25             unacceptable investment, cause the loan to become delinquent or
26             adversely affect the value or marketability of the loan.  (Lending
27             Guide § 1206.02 (b).)

28

-5-

Complaint

(d) That the origination and collection practices used by Robertson with respect to each note and security instrument had been in all respects legal, proper, prudent and customary in the mortgage origination and servicing business, and that no fraud or misrepresentation occurred in the origination of the loan. (Lending Guide § 1206.02 (k).)

(e) That the loan file contained an appraisal that has been reviewed and signed by an independent appraiser whose compensation was not affected by the approval or disapproval of the Loan. (Lending Guide § 1209.)

(f) That Robertson had reviewed the appraisal and concluded that the property in question was adequate security for the loan. (Lending Guide § 1209.)

(g) That the appraisal complied with IndyMac's appraisal guidelines, that the appraisal was of professional quality and was accurate, and that Robertson had provided to the appraiser all information that may have affected the value or marketability of the property. (Lending Guide § 1209.)

(h) That each of the Note, the related Security Instrument and all other agreements or instruments included in the Loan file have been duly executed and delivered by the applicable parties and each constitutes a legal, valid and binding obligation of the maker of thereof, enforceable in accordance with its terms. (Lending Guide § 1210.)

(i) That, to the best of Robertson's knowledge, the funds utilized by the mortgagor in the purchase of the subject property and in obtaining a loan relating thereto were not obtained through

Complaint

1    trafficking of illegal substances or through any other illegal
2    activity.  (Lending Guide § 1214.)
3    (j)  That all documents, materials and other information provided by
4         Robertson to IndyMac in connection with the delivery of a loan
5         were accurate and complete and had been completed, executed and
6         delivered in the form and manners specified in the Lending Guide.
7         (Lending Guide § 1215.)
8    (k)  That when any person or entity other than Robertson performed
9         services on behalf of Robertson, which services were required
10        under the Lending Guide to be performed by Robertson in
11        connection with the loans, such person or entity complied with all
12        requirements of the Lending Guide and Robertson had quality
13        control and internal audit procedures that included a sample
14        review of such services performed by such person or entity.
15        (Lending Guide § 1215.)
16        13.    The Customer Contract and the Lending Guide further provided
17   that the representations and warranties made by Robertson under the Customer
18   Contract and Lending Guide as to each loan submitted to IndyMac would
19   survive, inter alia, (a) any investigation by or on behalf of IndyMac, its
20   assignees or designees, (b) any purchase or funding of the loan by IndyMac, its
21   assignees or designees, (c) the subsequent transfer of the loan and/or the
22   servicing rights incident to the loan to any third party, and (d) liquidation of the
23   loan.  (Lending Guide § 1219.)
24   *C.  Other Terms, Conditions and Requirements of the Seller Guide*
25        14.    Under the Lending Guide, Robertson's failure to comply with each
26   requirement, term or condition set forth or incorporated in the Lending Guide
27   constitutes an "Event of Seller Default."  (Lending Guide § 1301.)
28

-7-

Complaint

1    *D. IndyMac's Remedies for Robertson's Breach of the Customer Contract and*
2    *Lending Guide*

3        15.     Under the Customer Contract and Lending Guide, IndyMac was
4    entitled to be indemnified and held harmless by Robertson against, inter alia, all
5    losses, damages, legal fees, expenses and related costs, and any other costs, fees
6    and expenses resulting from, arising out of, relating to, or in connection with (i)
7    a breach of any representation, warranty or obligation of Robertson contained in
8    or made pursuant to the Customer Contract or the Lending Guide, or (ii) any act
9    or omission by Robertson under the Customer Contract or the Lending Guide.
10    (Lending Guide § 1303.08.)

11        16.     Under the Lending Guide, exercise of a specific remedy available
12    to IndyMac in connection with a particular Event of Seller Default did not
13    prevent IndyMac from exercising any other remedies in connection with the
14    same Event of Seller Default. In addition, IndyMac could exercise any other
15    rights that it may have had at law or in equity deemed appropriate to protect its
16    interests.

17        17.     Under the Lending Guide, IndyMac could require reimbursement
18    from Robertson for any losses sustained by IndyMac.

19        18.     Under the Customer Contract and Lending Guide, IndyMac could
20    require Robertson to repurchase loans it had submitted pursuant to the
21    Customer Contract and Lending Guide when there was a breach of
22    representation and warranty, that was not cured and where the information
23    submitted by Robertson contained untrue statements of fact or omitted to state
24    facts necessary to make the information not misleading. (Customer Contract, §
25    8; Lending Guide § 1304.01.)

26    **FRAUDULENT MORTGAGE LOANS SUBMITTED BY ROBERTSON**

27        19.     Pursuant to the provisions contained in the Customer Contract and
28    subject to the terms and conditions of the Guide, Robertson submitted six

1  fraudulent loans for three purported borrowers who claimed to be purchasing

2  three properties as follows in Table A.

3  Table A:  Loans submitted by Robertson

| Loan | Borrower | Property Address | Loan Amount | Loan Application Date |
|------|----------|------------------|-------------|-----------------------|
| 1 | Erlinda Antonio | 1920 Shropshire St Roseville, CA 95747 | $580,000 | 9/30/06 |
| 2 | Erlinda Antonio | 1920 Shropshire St Roseville, CA 95747 | $145,000 | 9/30/06 |
| 3 | Camron Haywood | 80 Galleon Way Pittsburg, CA 94565 | $380,000.00 | 12/11/06 |
| 4 | Camron Haywood | 80 Galleon Way Pittsburg, CA 94565 | $95,000.00 | 12/11/06 |
| 5 | John Walker | 410 Gramercy Place Oakland, CA 94603 | $408,000 | 11/29/06 |
| 6 | John Walker | 410 Gramercy Place Oakland, CA 94603 | $102,000 | 11/29/06 |
|  |  | Total | $1,710,000 |  |

19  Pursuant to the Lending Guide, Robertson made each of the representations and

20  warranties in the Lending Guide with respect to each of the Loans in Table A.

21  The loans in Table A will be collectively referred to as the "Fraudulent

22  Robertson loans."  Each of the Fraudulent Robertson Loans contained false

23  statements in the loan documents, including the loan applications.  Moreover,

24  the loan applications for the Fraudulent Robertson loans failed to disclose that

25  the purported borrowers had recently entered into other large loan transactions

26  that would make them unable to perform an additional loan from IndyMac.  The

27  loans were also submitted in violation of numerous representations and

28  warranties in the Lending Guide.

Complaint

1    20.    In reliance on the representations and warranties made by

2  Robertson, and in reliance on the truth of the statements contained in the loan

3  documents, including the loan applications, IndyMac funded the Fraudulent

4  Robertson Loans on the dates, and in the amounts noted on the table, lending a

5  total of $1,710,000. The three borrowers made no mortgage payments or made

6  only a few payments. IndyMac has suffered damages in an amount to be

7  determined.

8    21.    IndyMac demanded that Robertson perform his repurchase

9  obligations under the Seller Contract and Lending Guide with regard to the

10  Fraudulent Robertson Loans.  Robertson has failed and refused to perform those

11  obligations despite having agreed and committed to do so.

12    22.    IndyMac performed all of its obligations to Defendants under, and

13  in accordance with, the Seller Contract and the Lending Guide, except any

14  obligations IndyMac was prevented or excused from performing by the acts and

15  breaches of Defendants.

16  **CONTRACTUAL RELATIONSHIP WITH ALLIANCE TITLE**

17  **COMPANY**

18    23.    On or about the closing date of each of the Fraudulent Robertson

19  Loans set forth in Table A, IndyMac and each of the Borrowers entered into a

20  written contract with Alliance whereby Alliance would receive the loaned funds

21  from IndyMac and close the loan in accordance with written instructions.  An

22  example of one of the Contracts, which are entitled "Lender's Closing

23  Instructions" is attached hereto as Exhibit B.  The material terms of all of the

24  closing instruction are the same for all of the Fraudulent Robertson Loans.  The

25  closing instructions for the Fraudulent Robertson Loans are individually and

26  collectively referred to herein as the "Closing Instructions."

27    24.    The Closing Instructions state that Alliance was not authorized to

28  close the Fraudulent Robertson Loans if it had knowledge of a transaction

-10-

Complaint

1   involving the borrower or the subject property that had occurred in the 180 days
2   before closing.  If Alliance became aware of such a recent transaction involving
3   the borrower or the subject property, it was to notify IndyMac in writing to
4   verify that this transaction had been considered by IndyMac in the course of its
5   underwriting of the loan. (Lender's Closing Instructions, Page 2, § Initial
6   Closing Instructions 10, Exhibit B).

7       25.    With respect to each of the Fraudulent Robertson Loans, Alliance
8   received IndyMac's funds and closed the loans.  At the time of closing the
9   Fraudulent Robertson Loans, Alliance was aware of multiple purchase
10  transactions that occurred with respect to the borrowers on the Fraudulent
11  Robertson Loans in the 180 days preceding that borrower's borrowing in
12  connection with one of the Fraudulent Robertson Loans.  Alliance failed to
13  notify IndyMac in writing of the existence of these transactions, and as a result,
14  these transactions, and the risk that they presented, were not considered by
15  IndyMac in its decisions to make the Frauduelnt Robertson Loans.

16      26.    IndyMac provided funds to Alliance in reliance upon its
17  representation that it would follow the Closing Instructions.  If IndyMac had
18  been notified of the existence of the multiple recent transactions that had been
19  entered into by each of the borrowers on the Fraudulent Robertson Loans, it
20  would have elected not to make the loans.

21          **FIRST CLAIM:  BREACH OF CONTRACT**
22          **(Against Defendant Robertson)**

23      27.    The FDIC refers to and incorporates by reference the allegations
24  contained in paragraphs 1 through 26 above, as if they were set forth again in
25  full.

26      28.    Robertson breached the Customer Contract and the Lending Guide
27  with regard to the Robertson Loans by submitting false and misleading
28  information in breach of his representations and warranties, as detailed above.

-11-

29.   IndyMac performed all of its obligations to Robertson under and in accordance with the Customer Contract and the Lending Guide, except any obligations IndyMac was prevented or excused from performing by the acts and breaches of Robertson.

30.   As a result of Robertson's breaches of contract, IndyMac was damaged in the amount of at least $1,710,000.

31.   Under the terms of the Customer Contract and the Lending Guide, IndyMac was entitled to indemnification and reimbursement for its losses, and was further entitled to recover its attorneys' fees and costs expended herein.

**SECOND CLAIM: SPECIFIC PERFORMANCE**

**(Against Defendant Robertson)**

32.   The FDIC refers to and incorporates by reference the allegations contained in paragraphs 1 through 26 and paragraphs 28 through 31 above, as if they were set forth again in full.

33.   The terms and provisions of the Customer Contract and the Lending Guide were just and reasonable as to IndyMac and Robertson, and the respective obligations of IndyMac and Robertson thereunder were supported by fair and adequate consideration.  The FDIC alleges this specific performance cause of action as an alternative remedy to its causes of action at law, and, for the purpose of preserving its right to pursue alternative remedies, alleges that it has no adequate remedy at law.

34.   The FDIC is entitled to a judicial decree of specific performance commanding Robertson to perform his obligations under the Customer Contract and the Lending Guide to repurchase the Robertson Loans.  The FDIC is further entitled to an award of ancillary damages from Robertson in an amount to be proven at the time of trial, and is entitled to recover its attorneys' fees and costs expended herein.

**THIRD CLAIM:**

**PROFESSIONAL NEGLIGENCE (MORTGAGE BROKER)**

**(Against Defendant Robertson)**

35.     The FDIC refers to and incorporates by reference the allegations contained in paragraphs 1 through 26, paragraphs 28 through 31, and paragraphs 33 through 34 above, as if they were set forth again in full.

36.     As the mortgage broker with a pecuniary interest in the transaction whereby IndyMac funded the loans described above, and as the Broker of Record with respect to the Fraudulent Robertson Loans, Robertson owed IndyMac a professional duty to act in accordance with the law and in accordance with the custom, practices and standards of conduct prevailing in the mortgage industry.  As part of this duty, Robertson owed IndyMac a duty that could not be delegated to independent contractors such as appraisers to provide accurate information in connection with the appraisal and to provide an appraisal that was free of negligence or fraud.  Robertson knew that the information he was providing to IndyMac would be used and relied upon by IndyMac in deciding to make the loans at issue herein.

37.     In breach of his duty to IndyMac, Robertson negligently provided materially inaccurate and misleading loan applications that, misrepresented the identity of one of the borrowers, grossly overstated the income of the borrowers, misrepresented the employment of the borrowers, misrepresented the intent of the borrowers to occupy the properties purchased with the loans, failed to accurately state the obligations of the borrowers, misrepresented the value of the properties, and otherwise contained false information.  In addition, Robertson negligently provided inaccurate and incomplete appraisals that overstated the value of certain of the properties that were to be security for the Fraudulent Robertson Loans.

38.     IndyMac relied upon Robertson to conduct his business in accordance with the duty of care implied by the law and the custom of the mortgage industry,

-13-

Complaint

1  and believed that the information submitted by Robertson was true and had been

2  reviewed in accordance with the Customer Contract, the Lending Guide and other

·3  standards prevalent in the mortgage industry.

4       39.    In making its decision to make the loans described above, IndyMac

5  relied upon the information submitted to it by Robertson in connection with the

6  Fraudulent Robertson Loans.

7       40.    IndyMac was damaged as a direct and proximate result of its

8  reliance upon Robertson to perform his professional duties as a mortgage broker

9  properly, and Robertson's failure to do so.  IndyMac was damaged in the

10  amount of at least $1,710,000.

11          **FOURTH CLAIM:  CONTRACTUAL INDEMNITY**

12                  **(Against Defendant Robertson)**

13       41.    The FDIC refers to and incorporates by reference the allegations

14  contained in paragraphs 1 through 26, paragraphs 28 through 31, paragraphs 33

15  through 34, and paragraphs 36 through 40 above, as if they were set forth again

16  in full.

17       42.    The Customer Contract and Lending Guide obligate Robertson to

18  indemnify IndyMac for losses it may suffer as the result of the happening of

19  numerous occurrences, including Robertson's failure to comply with the

20  Customer Contract and the Lending Guide or his professional duties to

21  IndyMac with respect to the Robertson Loans.

22       43.    IndyMac suffered losses and claims in connection with

23  Robertson's negligence and his defaults under the Customer Contract and the

24  Lending Guide in the amount of at least $1,710,000.  Pursuant to the Customer

25  Contract and the Lending Guide, Robertson was obligated to indemnify

26  IndyMac in this amount, or a greater amount to be proved at trial, together with

27  interest, attorneys' fees and other charges incurred as a result of these losses.

28

Complaint

**FIFTH CLAIM: FRAUD**

**(Against Robertson, Haw and DOES 1 through 100, inclusive)**

44.     The FDIC refers to and incorporates by reference the allegations contained in paragraphs 1 through 26, paragraphs 28 through 31, paragraphs 33 through 34, paragraphs 36 through 40, and paragraphs 42 through 43 above, as if they were set forth again in full.

45.     In connection with the Fraudulent Robertson Loans, Robertson and Haw conveyed to IndyMac loan applications and other documents that made false statements of existing fact, including:

*False Statements with regard to loans to "Erlinda Antonio"*

    (a)     In connection with the closing of two loans to Erlinda Antonio that are listed as items 1 and 2 of Table A, the loan applications were prepared and signed by Reed Robertson.  These loan applications represented that Ms. Antonio was employed as the Controller at a Company known as Haw Catering, California, and was earning a monthly base income of $15,229.  Robertson further represented that Ms. Antonio intended to occupy the property securing the loans, commonly known as 1920 Shropshire St, Roseville, CA 95747, as her primary residence.

    (b)     To provide further proof of Erlinda Antonio's supposed employment, James Haw represented that Ms. Antonio was employed as the Controller of Haw Catering.

*False Statements with regard to Loans to "Camron Haywood"*

    (c)     In connection with the closing the two loans to Camron Haywood that are listed as items 3 and 4 of Table A, Robertson conveyed the representation that Camron Haywood was employed as the loan officer at Natural Capital, California, and was earning a monthly base income of $11,500.

Complaint

(d)    Robertson conveyed the representation that Mr. Haywood had a
social security number which actually belonged to another person.
The loan applications conveyed by Robertson to IndyMac further
represented that Haywood intended to occupy the property
securing the loans, commonly known as 80 Galleon Way,
Pittsburg, CA 94585, as his primary residence.

*False Statements with regard to Loans to "John Walker"*

(e)    In connection with the closing the two loans to John Walker that
are listed as items 5 and 6 of Table A, Robertson conveyed the
representation that Mr. John Walker was employed as Electrician 2
at a company known as Power Up Electric, California, and was
earning a monthly base income of $12,000.  Robertson conveyed
the representation that Mr. Walker intended to occupy the property
securing the loans, commonly known as 410 Gramercy Place,
Oakland, CA 94503, as his primary residence.

46.    In connection with the Fraudulent Robertson Loans, Robertson
conveyed loan applications that failed to disclose the following material facts:

*Material Undisclosed Facts in Connection with Erlinda Antonio Loans:*

(a)    Erlinda Antonio failed to disclose that in September 2006, she
purchased an additional property in Citrus Heights, California, and
undertook to pay back two additional purchase money loans in
connection with that transaction.  The amount of these loans, which are
detailed below, created material additional liabilities of the purported
borrower in the amount of $425,000.

| Borrower | Property Address | Loan amount | Date of Recording |
|---|---|---|---|
| Erlinda Antonio | 7410 Cessna Drive Citrus Heights, CA 95621 | $340,000 | 9/13/06 |

-16-

Complaint

| Erlinda Antonio | 7410 Cessna Drive Citrus Heights, CA 95621 | $85,000 | 9/13/06 |
|---|---|---|---|
| | **Total** | **$425,000** | |

*Material Undisclosed Facts in Connection with Camron Haywood Loans.*

(b) Camron Haywood failed to disclose that in November and December 2006, he purchased three additional properties in Stockton, Brentwood, and Tracy, all in the state of California, and undertook to pay back six additional purchase money loans in connection with these transactions.  The amount of these loans, which are detailed below, created material additional liabilities of the purported borrower in the amount of $1,569,000.

| Borrower | Property Address | Loan amount | Date of Recording |
|---|---|---|---|
| Camron Haywood | 1016 Cypress Hill Ln Stockton, CA 95206 | $437,600.00 | 12/13/06 |
| Camron Haywood | 1016 Cypress Hill Ln Stockton, CA 95206 | $109,400.00 | 12/13/06 |
| Camron Haywood | 528 Birchwood Rd Brentwood, CA 94513 | $417,000.00 | 12/1/06 |
| Camron Haywood | 528 Birchwood Rd Brentwood, CA 94513 | $110,000.00 | 12/1/06 |
| Camron Haywood | 625 Buckinhorse Ct Tracy, CA 95376 | $396,000.00 | 11/27/06 |
| Camron Haywood | 625 Buckinhorse Ct Tracy, CA 95376 | $99,000.00 | 11/27/06 |

Complaint

| | Total | $1,569,000.00 | |
|---|---|---|---|

*Material Undisclosed Facts in Connection with John Walker Loans:*

(c)   John Walker failed to disclose that from October through December 2006, he purchased three additional properties in Elk Grove, Pittsburg, and Antioch, all in state of California, and undertook to pay back six additional purchase money loans in connection with that transaction. The amount of these loans, which are detailed below, created material additional liabilities of the purported borrower in the amount of $1,803,000.

| Borrower | Property Address | Loan Amount | Date of Recording |
|---|---|---|---|
| John Walker | 2217 Galen Dr Elk Grove, CA 95758 | $432,000 | 11/2/06 |
| John Walker | 2217 Galen Dr Elk Grove, CA 95758 | $108,000 | 11/2/06 |
| John Walker | 1092 Mayport Dr Pittsburg, CA 94565 | $454,400 | 12/4/06 |
| John Walker | 1092 Mayport Dr Pittsburg, CA 94565 | $113,600 | 12/4/06 |
| John Walker | 2658 Zepher Ct Antioch, CA 94531 | $556,000 | 10/27/06 |
| John Walker | 2658 Zepher Ct Antioch, CA 94531 | $139,000 | 10/27/06 |
| | Total | $1,803,000 | |

47.   The representations made to IndyMac in support of the loan were untrue in at least the following respects:

(a) Erlinda Antonio was not employed by Haw Catering.

-18-

Complaint

(b) Haw Catering is not an actual business but an imaginary company created by James Haw for the purpose of generating false employment information that would induce IndyMac to make the loans to Erlinda Antonio.

(c) Camron Haywood was not employed by Natural Capital.

(d) John Walker was not employed by Power Up Electric.

(e) Erlinda Antonio did not earn monthly base income of $15,299.

(f) Camron Haywood did not earn monthly base income of $11,500.

(g) John Walker did not earn monthly base income of $12,000.

(h) Erlinda Antonio, Camron Haywood, and John Walker had no intent to occupy subject properties.

(i) Camron Haywood did not have the social security number that he purported to have.

48.    The loan applications conveyed by Robertson and Haw in connection with the Fraudulent Robertson Loans were also misleading because they did not disclose liabilities of the borrowers which, if known, would have caused IndyMac to decline to make the loans to purported borrowers Antonio, Haywood, and Walker.

49.    James Haw also materially participated in the creation of the fraudulent loan applications for Erlinda Antonio by recruiting her as a straw buyer for the property, and promising her that she would not have to pay back the loan.

50.    Robertson and Haw knew that the Antonio, Haywood and Walker loan applications contained false statements and omitted to state material information.

51.    Robertson and Haw knew that IndyMac would rely on the false representations contained in the Antonio, Haywood, and Walker loan

Complaint

1  applications, and made and conveyed these representations to IndyMac with the

2  intent to induce IndyMac to make loans to Antonio, Haywood, and Walker

3  from which Robertson and Haw would benefit.

4      52.   IndyMac justifiably and reasonably relied upon the false

5  representations detailed above.  Believing in the truth and completeness of the

6  misleading loan applications prepared and conveyed to it by Robertson and

7  Haw, IndyMac made the loans to Antonio, Haywood, and Walker that are

8  detailed above, in the amount of $1,710,000.

9      53.   As a direct and proximate cause of the reliance upon the fraudulent

10  and misleading loan applications prepared and submitted by Robertson and

11  Haw, IndyMac suffered damage in an amount to be proved at trial, in the

12  amount of at least $1,710,000.

13      54.   Robertson and Haw acted with the specific intent of injuring

14  IndyMac and obtaining material benefit for themselves, and therefore have

15  acted with malice, oppression and fraud.  The FDIC is therefore entitled to an

16  award of exemplary damages in an amount to be determined at trial.

17              **SIXTH CLAIM:  BREACH OF CONTRACT**

18                  **(Against ALLIANCE TITLE CO)**

19      55.   The FDIC refers to and incorporates by reference the allegations

20  contained in paragraphs 1 through 26, paragraphs 28 through 31, paragraphs 33

21  through 34, paragraphs 36 through 40, paragraphs 42 through 43, and

22  paragraphs 45 through 54 above, as if they were set forth again in full.

23      56.   Alliance breached the Contract represented by the Lenders'

24  Closing Instructions by Closing the Fraudulent Robertson Loans despite its

25  knowledge of other transactions involving Erlinda Antonio, Carmon Haywood,

26  and John Walker within 180 days prior to the closing dates.  At the time of the

27  closings, Alliance was aware of at least the following additional transactions

28

Complaint

involving these buyers within the 180 days of the closings of the Fraudulent
Robertson Loans:

| Borrower | Property Address | Loan Amount | Date of Recording |
|---|---|---|---|
| Erlinda Antonio | 7410 Cessna Drive Citrus Heights, CA 95621 | $340,000 | 9/13/06 |
| Erlinda Antonio | 7410 Cessna Drive Citrus Heights, CA 95621 | $85,000 | 9/13/06 |
| Camron Haywood | 528 Birchwood Rd Brentwood, CA 94513 | $417,000.00 | 12/1/06 |
| Camron Haywood | 528 Birchwood Rd Brentwood, CA 94513 | $110,000.00 | 12/1/06 |
| Camron Haywood | 625 Buckinghorse Ct Tracy, CA 95376 | $396,000.00 | 11/27/06 |
| Camron Haywood | 625 Buckinghorse Ct Tracy, CA 95376 | $99,000.00 | 11/27/06 |
| John Walker | 2217 Galen Dr Elk Grove, CA 95758 | $432,000 | 11/2/06 |
| John Walker | 2217 Galen Dr Elk Grove, CA 95758 | $108,000 | 11/2/06 |
| John Walker | 2658 Zepher Ct Antioch, CA 94531 | $556,000 | 10/27/06 |
| John Walker | 2658 Zepher Ct Antioch, CA 94531 | $139,000 | 10/27/06 |

Nevertheless, and despite its knowledge of these transactions, Alliance
negligently failed to follow its closing instructions and proceeded to close the
Fraudulent Loans.

57.    IndyMac performed all of its obligations to Alliance under the
Closing Instructions, except any obligations IndyMac was prevented or excused
from performing by the acts and breaches of Alliance.

-21-

58.     As a result of Alliance's negligent closing of the Fraudulent
Robertson Loans in breach of the Closing Instructions, IndyMac was damaged
in the amount of at least $1,710,000.

### SEVENTH CLAIM:  PROFESSIONAL NEGLIGENCE
### (Against ALLIANCE TITLE CO)

59.     The FDIC refers to and incorporates by reference the allegations
contained in paragraphs 1 through 26, paragraphs 28 through 31, paragraphs 33
through 34, paragraphs 36 through 40, paragraphs 42 through 43, paragraphs 45
through 54, and paragraphs 56 through 58 above, as if they were set forth again
in full.

60.     As the closing agent for the Fraudulent Robertson Loans, Alliance
owed to IndyMac a professional and limited fiduciary duty to use reasonable
and professional care in accordance with the standards of the industry while
providing closing services.

61.     In breach of its professional duty, Alliance negligently failed to
notify IndyMac of borrower's multiple transactions, of which it had knowledge,
and instead negligently proceeded to close the transactions, and to provide
IndyMac's funds to the borrowers and others.

62.     As a direct and proximate cause of Alliance's negligence, IndyMac
suffered damage in an amount to be determined at trial, but not less than
$1,710,000.

Complaint

1    WHEREFORE, the FDIC prays for judgment against Defendants, and

2  each of them, as follows:

3    A.    That the Court enter a decree of specific performance commanding

4  Robertson  to perform his repurchase obligations under the Seller Contract and

5  the Lending Guide and to repurchase the Fraudulent Robertson Loans, under

6  the terms of said Seller Contract and Lending Guide, at the sums provided for

7  therein;

8    B.    For ancillary damages incurred as a result of Defendant's failure to

9  perform under the Seller Contract, Lending Guide, and Lender's Closing

10  Instructions;

11    C.    For compensatory damages, according to proof at trial, in the

12  amount of at least $1,710,000.

13    D.    For exemplary damages in an amount to be determined at trial.

14    C.    For prejudgment interest at the legal rate;

15    D.    For costs of suit and reasonable attorneys' fees incurred herein;

16  and

17    E.    For such other and further relief as the Court deems just and

18  proper.

19

20  Dated: April 3, 2009                    KRALIK & JACOBS LLP

21

22                                         By _____

23                                              JOHN J. KRALIK IV
                                              Attorneys for Plaintiff FDIC
24

25

26

27

28

-23-

Complaint

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV09- 2342 DSF (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X]  Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ]  Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ]  Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

KRALIK & JACOBS LLP
JOHN J. KRALIK IV, NO. 91206
301 North Lake Avenue, Suite 202
Pasadena, CA 91101
email: john.kralik@kralikjacobs.com
Telephone: (626) 844-3505

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for IndyMac Bank , F.S.B.

PLAINTIFF(S)

v.

ALLIANCE TITLE CO., INC. a California Corporation,
REED BENNETT ROBERTSON, an individual doing business as
"NATURAL CAPITAL"; JAMES  FLORES HAW, an individual;
and DOES 1 through 10, inclusive

DEFENDANT(S).

CASE NUMBER

CV09-2342 DSF AJWx

**SUMMONS**

TO:   DEFENDANT(S):   ALLIANCE TITLE CO., INC. a California Corporation, REED BENNETT ROBERTSON, an individual doing business as "NATURAL CAPITAL"; JAMES  FLORES HAW, an individual; and DOES 1 through 10, inclusive

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Kralik & Jacobs LLP_____, whose address is _301 North Lake Avenue, Suite 202, Pasadena, CA 91101_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   **APR - 3 2009**

By: _Natalie Hongoria_

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for IndyMac Bank, F.S.B.

**DEFENDANTS**
ALLIANCE TITLE CO., a California Corporation, REED BENETT ROBERTSON, an individual doing business as "NATURAL CAPITAL"; JAMES FLORES HAW, an individual; and DOES 1 through 10, inclusive

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

KRALIK & JACOBS LLP    Attorney for FDIC    Tel. (626) 844-3505
John J. Kralik IV
301 No. Lake Ave., Ste 202, Pasadena, CA  91101

**Attorneys (If Known)**

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes  ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No     ☒ **MONEY DEMANDED IN COMPLAINT:** $ 1,710,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
12 U.S.C. 1819(b)(2)(A); FDIC seeks relief against closing agent and others for claims including breach of contract, fraud, and professional negligence.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☒ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

---

**FOR OFFICE USE ONLY:**  Case Number: CV09-2342

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

COPY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
  ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☒  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Alliance Title Company, Inc.– Santa Clara; Reed Bennett Robertson - Contra Costa; James Flores Haw - Placer | Other Defendants: Unknown |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Each claim arose in Los Angeles County |  |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date 4/3/09

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |